UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TAMMY SUE BAYLESS,<br><br>               Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>               Respondent. | Case No. 1:18-CV-00354-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court is Tammy Bayless's Petition for Review of the

Respondent's denial of social security benefits, filed on August 13, 2018. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will remand the decision

of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting
Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on February 13, 2015. This application was denied initially and on reconsideration, and a hearing was conducted on April 3, 2017, before Administrative Law Judge (ALJ) Stephen Marchioro. After considering testimony from Petitioner and a vocational expert, ALJ Marchioro issued a decision on August 4, 2017, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on June 28, 2018.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of January 24, 2015, Petitioner was fifty-four years of age.[2] Petitioner obtained her GED in 1985. Her past relevant work experience includes work as training supervisor for a school bus company.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 24, 2015. At step two, it must be determined whether the claimant

---

[2] Petitioner's birthdate is June 1, 1960.

suffers from a severe impairment. The ALJ found Petitioner's obesity, fracture of right lower extremity, post-traumatic stress disorder, major depressive disorder, and panic disorder severe within the meaning of the Regulations. The ALJ found also that Petitioner's irritable bowel syndrome (IBS) and rheumatoid arthritis were non-severe, because the conditions were adequately controlled with prescription medications. (AR 27.)[3]

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's musculoskeletal and mental impairments did not meet or equal the criteria for any listed impairment. The ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 12.04 (Depressive Disorders), 12.06 (Anxiety Disorders), and 12.15 (Trauma and Stressor Related Disorders). (AR 29.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and then determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to perform medium work as defined by 20 C.F.R. § 404.1567(c) with limitations. The ALJ found Petitioner could frequently operate foot controls with her right lower extremity; occasionally climb ramps and stairs; never climb ropes, ladders and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; occasionally be exposed to vibrations; and that she must avoid all use of unguarded moving mechanical parts and exposure to unprotected

---

[3] Petitioner suffered also from upper respiratory infections and hypertension. (AR 27.) These other non-severe impairments are not at issue.

heights. The ALJ further limited Petitioner to performing work tasks consisting of only simple, routine tasks, with occasional interaction with the public and coworkers, and found she would work best in small, familiar groups. The ALJ found also that Petitioner would require access to a bathroom such as is normally available in an office or similar workplace environment. (AR 30.)

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions were not entirely consistent with the medical evidence and her treatment history. (AR 31.) In doing so, the ALJ considered the opinions of the state agency physicians, Drs. Myung Song, D.O., and Michael O'Brien, M.D. Both Drs. Song and O'Brien were of the opinion that Petitioner was limited to light work. (AR 34.) The ALJ gave their opinions "limited weight" on the grounds that they were examining sources who did not review the entire record available, and because their opinions were inconsistent with Petitioner's treatment history. (AR 34.)

The ALJ also considered four lay witness statements from Petitioner's husband, her supervisor from her last job, a friend and former co-worker, and her step-father. (AR 34.) The ALJ assigned their statements limited weight, because none was medically trained; their assessments were colored by their affection for Petitioner; and the statements were not consistent with the opinions of the medical sources.

Based upon his evaluation of the record and the hypothetical posed to the vocational expert, the ALJ found Petitioner was not able to return to her past relevant

work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ determined Petitioner was able to perform work as a stuffer and as a picker, which are medium exertional level jobs available in significant numbers in the national economy. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do her previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner argues the ALJ erred at step four of the sequential evaluation. Petitioner asserts the ALJ improperly evaluated the opinions of Drs. Song and O'Brien; did not give germane reasons for discounting the statements of the lay witnesses; and improperly

evaluated Petitioner's credibility. Petitioner argues the ALJ's errors resulted in an inaccurate RFC that failed to account for all her medically determinable impairments and their effect as a whole on her capacity to perform work. She contends also that, if the opinions of Drs. Song and O'Brien were properly credited, Rule 202.06 of the Medical-Vocational Guidelines would require a finding of disabled. Petitioner asks the Court to reverse the ALJ's decision and remand for further consideration.

### 1. Physician Opinion

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted."). Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ may reject the uncontradicted opinion of a physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted); *see also* SSR 96-2P, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Drs. Song and O'Brien provided their review and assessment of Petitioner's physical capacity in June of 2015 and July of 2015, respectively. Dr. Song was of the opinion that Petitioner's arthritis and IBS symptoms did not cause any significant limits. (AR 100.) In his opinion, Petitioner had the following exertional limitations as a result of

her physical impairments: she could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; and she had an unlimited ability to push and/or pull, other than the lift/carry restrictions. Dr. Song also assigned postural limitations due to Petitioner's history of right tibial plateau fracture, respiratory infections, and obesity. These limitations consisted of frequent balancing, climbing ramps and stairs, kneeling, crouching, and crawling; occasionally climbing ladders, ropes or scaffolds; avoiding exposure to vibration and hazards such as machinery; and avoiding concentrated exposure to fumes, odors, dust gases, and extreme cold. (AR 100-102.) Dr. Song opined Petitioner could perform light work, and return to her past work as described, as a training supervisor for bus drivers. (AR 98.)

Dr. O'Brien's later opinion was in accord with Dr. Song's opinion. He was of the opinion that Petitioner's physical limitations would allow her to perform light work, with restrictions, and that she could return to her past work as performed. (AR 111.) Dr. O'Brien's physical residual capacity assessment was the same as Dr. Song's, and included the same exertional and postural limitations. (AR 111-115.)

The ALJ assigned limited weight to the non-examining physician opinions because their opinions did not consider all of the record available at the hearing level, and the opinions were inconsistent with Petitioner's treatment history. (AR 34.) The ALJ provided no further analysis. Elsewhere in the ALJ's written determination, however, the ALJ noted Petitioner received minimal treatment for her physical impairments. (AR 31, 32, 33.)

First, the parties disagree regarding the proper standard to evaluate the physicians'

opinions. Petitioner argues the clear and convincing standard applies, while Respondent argues that the specific and legitimate standard applies. Respondent provided no support for his assertion that the state agency opinions were contradicted in the record. Respondent's brief at 11. (Dkt. 12 at 11.) No other physician provided an assessment of Petitioner's physical RFC,[4] and both Drs. Song and O'Brien came to the same conclusions and opinions. The Court finds no support in the record for concluding that the physicians' opinions were contradicted; therefore, the Court will apply the clear and convincing standard.

The Court finds the ALJ erred in assigning limited weight to the two non-examining physicians' opinions, because he did not provide clear and convincing reasons supported by substantial evidence in the record to support that assignment. First, the ALJ did not explain how a review of later medical records from 2016 and 2017 would have impacted the opinions of Drs. Song and O'Brien. These later records, dated June 21, 2016, and January 11, 2017, indicate Petitioner sought treatment for her chronic, daily diarrhea; arthritis flares affecting her hands; and anxiety. (AR 722 – 749.) She sought medication refills for her chronic conditions, which included Diazepam for anxiety; Metroprolol for hypertension; Tramadol and Mobic for arthritis; and Lozol for chronic diarrhea. (AR 730.) These records are not substantially dissimilar from earlier records, which showed

---

[4] Rather, the other physicians' opinions were confined to Petitioner's mental residual functional capacity. (AR 33.) Petitioner does not contest the ALJ's evaluation of these opinions, rendered by consultative psychiatric examiner Ryan Hulbert, Ph.D.; state agency psychiatric consultants Mack Stephenson, Ph.D. and Michael Dennis, Ph.D.; and Petitioner's therapist, Cathierine Kraus, LCSW. (AR 33.)

treatment for the same chronic conditions as well as for her right tibial plateau fracture. (AR 317 – 364.)

Against the backdrop of relatively similar treatment records both before and after the state agency examining physicians rendered their opinions, the ALJ's reasoning offers no more than "boilerplate language that fails to offer a substantive basis for [the ALJ's] conclusion." *Garrison*, 759 F.3d at 1013. The ALJ did not explain how the opinions were inconsistent with Petitioner's treatment history, which appeared to consist of maintenance visits for the purpose of refilling medications to control her chronic physical conditions.

And, the ALJ's unexplained conclusion runs afoul of administration policy, which requires the ALJ to consider whether the opinions of state agency physicians are consistent with later evidence received by the ALJ that was not before the state agency, and the consistency of the opinion with the record as a whole. SSR 96-6P (S.S.A. July 2, 1996). In other words, the ALJ is not permitted to summarily dismiss a physician's opinion merely because the physician did not have the benefit of later records; the ALJ is required to consider whether the opinion is consistent with later records and the record as a whole. The ALJ failed to engage in such an analysis.

Second, the ALJ did not explain why he concluded Petitioner retained the ability to perform work at the medium exertional level, considering the ALJ assigned some greater physical limitations than did the state agency physicians who limited Petitioner to work at

the light exertional level.[5] For instance, the ALJ limited Petitioner to occasional climbing

of ramps and stairs, while the state agency physicians indicated Petitioner could frequently

climb ramps and stairs. (AR 30, 115.) The ALJ limited Petitioner to occasional exposure

to vibration, while the state agency physicians advised Petitioner should avoid even

moderate exposure to vibration. (AR 30, 115.) Additionally, the ALJ failed to explain

what evidence supported his conclusion that Petitioner could tolerate the demands of work

at the medium exertional level, which include lifting up to fifty pounds occasionally and

twenty five pounds frequently, when the state agency physicians limited Petitioner to light

work.

The Court finds that the ALJ improperly evaluated the medical opinion evidence

regarding Petitioner's physical residual functional capacity, and failed to provide clear and

convincing reasons supported by substantial evidence in the record when assigning limited

weight to the opinions of Drs. Song and O'Brien.

## 2. Lay Witness Testimony

In this matter, Petitioner provided four witness statements submitted by her husband;

her former manager; a friend and former co-worker; and her step-father in support of her

application for disability benefits. Petitioner argues that the ALJ committed error by failing

---

[5] Medium work is defined by the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Light work, in turn, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

to provide specific reasons germane to each lay witness sufficient to effectively reject their statements. (Dkt. 14 at 20.)

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must consider, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12.

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

Petitioner's husband of eleven years, Robert Bayless, completed a third party function report on March 23, 2015. (AR 245-252.) He explained Petitioner required assistance with lifting, digging in the garden, and tasks requiring the use of her hands because of her arthritis. (AR 245-252.) He also stated Petitioner left the house only when necessary, to either shop or go to doctor appointments, because of her anxiety and IBS. He explained that Petitioner must be near a bathroom, and that while Petitioner was still working, she spent three hours in the bathroom prior to leaving the house to avoid having a bowel accident. Mr. Bayless also described his wife's behavior before leaving the house for appointments as "terrified" and "worried." (AR 252.)

Petitioner's supervisor for twenty years, Steph Blas, provided a statement dated February 20, 2017. (AR 287.) She explained that, over the last few years of working for the school bus company, accommodations were provided to allow Petitioner to maintain employment. These accommodations included an office close to the restroom; limited travel and meeting times due to anxiety and bowel symptoms; allowing her to leave work frequently; and working a flexible schedule. Ms. Blas stated also that, due to pain flare ups in Petitioner's hands and wrists, Petitioner at times could not write or type, and that her physical and mental health symptoms resulted in missing "a lot of work." Petitioner was eventually terminated from her employment. (AR 291.)[6]

---

[6] Ms. Blas' letter does not explain the reasons for Petitioner's termination from her employer after a twenty year employment history with the same company. However, Mr. Merlyn Clark's later statement indicates the school bus company terminated Petitioner's employment because she was unable to perform the essential functions of her job. (AR 291.)

Petitioner's friend and former co-worker of seventeen years, Susan Dewyar, provided a statement on March 8, 2017. (AR 288.) She described her friend as active, sociable, and outgoing, until about five years prior to her statement. She also stated Petitioner often missed work, left work early, and had difficulty functioning at work due to mental health and physical symptoms. For instance, Ms. Dewyar observed Petitioner at meetings, stating that she would stand by a door closest to a restroom and would walk out if she became overwhelmed. Ms. Dewyar also witnessed Petitioner's bowel accidents and pain from arthritis, explaining that she often could not move her hands and would not go to restaurants because of her fear of having a bowel accident.

Finally, Petitioner's step-father, Merlyn Clark, provided a letter dated March 18, 2017. (290-291.) He has known Petitioner since 1969. Mr. Clark, who is an attorney in the Boise area, had concerns about Petitioner's termination from employment in 2015, and investigated the reasons for her termination in anticipation of filing a lawsuit for wrongful termination on Petitioner's behalf. He explained that his investigation revealed Petitioner was accommodated at work, but because of her anxiety and arthritis pain, she was unable to perform the essential functions of her job. (AR 291.) Mr. Clark described also that Petitioner often refused to leave the house, including to visit with family. (AR 291.)

The first reason the ALJ gave for assigning the four lay witness statements limited weight was that none was "medically trained" to make exacting determinations concerning the dates, frequencies, types or degree of medical signs or symptoms, and therefore the accuracy of the observations was questionable. (AR 34.) However, the Regulations specifically instruct an ALJ to consider testimony from "non-medical sources" who have

an opportunity to observe the claimant. *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, the fact that the lay witnesses have no medical training is not a proper reason to reject their testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (explaining the Regulations instruct the ALJ to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work") (emphasis added); *Gutierrez v. Colvin*, 208 F. Supp. 3d 1117, 1125 (E.D. Cal. 2016) (rejecting lack of medical training as a germane reason to discredit lay witness testimony).

The second reason the ALJ gave for assigning the four lay witness statements limited weight was that the witnesses' testimony was "colored by affection" for Petitioner based upon their close relationship with her. This amounted to a wholesale dismissal of the testimony of all the witnesses as a group, and therefore does not qualify as a reason germane to each individual who testified. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). Moreover, the same could be said of any family member or friend who testified in any case. *Id.* The fact that a lay witness is a family member or friend cannot be a ground for rejecting his or her testimony. *Id.* To the contrary, testimony from lay witnesses who see the claimant every day is of particular value, *see Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering ... this is particularly true of witnesses who view the claimant on a daily basis ..."); such lay witnesses will often be family members or friends.

The last reason the ALJ gave was that the statements were not consistent with the opinions of the medical sources, which were given the greatest weight. The ALJ did not elaborate, however, regarding which medical opinions he found inconsistent with the lay

witness statements. Moreover, with regard to the ALJ's assessment of Petitioner's physical functional capacity, the reasoning is at odds with the ALJ's assignment of "limited weight" to the opinions of Drs. Song and O'Brien. Given the Court's assignment of error in this regard, the reason is insufficient.

The ALJ mentioned also that Petitioner had only four office visits over two and one half years (other than counseling sessions), which he found was not reflective of the type of severe limitations noted in the lay witness statements. (AR 34.) In other words, the ALJ disregarded the testimony, apparently because he concluded the infrequent physician visits meant Petitioner was not suffering severe physical symptoms from arthritis or IBS. But, the rejection of the testimony of Petitioner's friends and family members because her medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records. *See* SSR 88–13 (where "allegation [of subjective symptom] is not supported by objective medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the [symptom] and its effects to ... third parties who would be likely to have such knowledge."). *Smolen*, 80 F.3d at 1289.

Based on the above, the Court finds the ALJ erred in giving the lay witness testimony limited weight.[7]

---

[7] Respondent did not raise harmless error. Accordingly, the Court will not consider whether the error fits the standard for the same.

**3.** **Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom. *Id.* Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof. *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Burch*, 400 F.3d at 680. This is not an easy requirement to meet---the clear and convincing standard is the most

demanding required in Social Security cases. *Garrison*, 759 F.3d at 1014–15 (citations omitted) (internal quotation marks omitted).

In evaluating credibility, the ALJ may engage in ordinary techniques, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and, treatment measures taken by the claimant to alleviate those symptoms. *See* SSR 96-7p.

Here, the ALJ found that Petitioner went long periods without treatment and had very minimal treatment for her physical conditions during the adjudicatory period. (AR 32-33.) Also, the ALJ found that Petitioner did not seek emergency treatment or "begin mental health treatment" until nine months after the alleged onset date. (AR 33.) However, these findings do not rise to the level of clear and convincing reasons supported by substantial evidence in the record.

In assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). According to agency rules, "the individual's statements may be less credible if the level or frequency of

treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7 at 5. Moreover, a claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the record contained evidence Petitioner could not afford treatment for her rheumatoid arthritis. (AR 526, 722.) She testified at the hearing before the ALJ that she was unable to see a therapist for her mental health care because she lacked insurance. (AR 62.)[8] However, she did receive treatment in the form of psychotropic drug therapy. (AR 420, 430, 472.) She also was unable to afford specialized treatment for her chronic diarrhea. (AR 62.) Where a claimant provides evidence of a good reason for not seeking frequent treatment, Petitioner's symptom testimony cannot be rejected for not doing so. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Thus, the fact Petitioner was not seeking more treatment is not a clear and convincing reason for discrediting her symptom testimony on the record before the ALJ.

Furthermore, "in evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function." SSR 88–13 (emphasis added). Such other evidence includes the claimant's prior

---

[8] Petitioner testified that her current therapist charges her based upon a sliding scale. Petitioner pays $20.00 to $25.00 each visit, and her parents pay for part of that fee. (AR 63.)

work record, her daily activities, and observations by treating and examining physicians and third parties about the claimant's symptoms and their effects. *See* SSR 88–13.

In this matter, Petitioner offered substantial "other" evidence to corroborate her subjective symptom testimony, including her long work history; lay testimony from family members, friends, and work supervisors regarding her daily activities at home and her ability to function at work; and observations of her work supervisor regarding the accommodations provided to enable her to work. Given this substantial corroborating evidence, the fact that Petitioner did not seek regular or more aggressive treatment for her chronic conditions does not constitute a clear and convincing reason for rejecting her symptom testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The second reason the ALJ gave for discrediting Petitioner's testimony was inconsistency with her daily activities. He referred to her ability to help clean the house for a family member, prepare for the holidays, go on a camping trip, and hold a Christmas party. (AR 32.) However, the ALJ's finding that Petitioner's activities indicate an ability to work is not supported by the record. The activities the ALJ cited and that Petitioner described were consistent with the waxing and waning nature of arthritis symptoms, anxiety, and chronic diarrhea. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 530-31 (6th Cir. 1992) (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). *See also*

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Only if the level of activity was inconsistent with Petitioner's claimed limitations, would these activities have any bearing on Petitioner's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ did not explain how occasional and sporadic activities were inconsistent with Petitioner's allegations that she could not sustain an eight-hour work day on a full time basis without interruption from arthritis pain, diarrhea, or anxiety symptoms.

Third, the ALJ discredited Petitioner's testimony because she stopped work for non-disability reasons (i.e., being fired), which he found undermined her claim that her inability to work was due to her impairments. (AR 33.) This finding ignores the evidence in the record that Petitioner was terminated from her employment because, despite accommodations for her impairments, she was no longer able to perform the essential functions of her job. (AR 287 – 291.) The determination by the ALJ includes no reconciliation of the third party statements about Petitioner's ability to function at her job with the reason for the termination of her employment.

Fourth, the ALJ discredited Petitioner because she reportedly looked for employment during her alleged period of disability and received unemployment benefits, which requires a claimant to assert she is ready, willing and able to work. (AR 33.) Receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime*, see Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988); *accord Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005) (recognizing receipt of unemployment

benefits could impact a claimant's disability claim), provided the record establishes that the claimant held herself out as available for full-time or part-time work. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the record is conflicting. Petitioner testified that she received a severance package from her employer upon her termination from employment, despite having been fired. (AR 72.) She was terminated from her employment because of her medical conditions, as she could no longer perform the essential functions of her job. (AR 287-291.) She testified also that she was required to sign an agreement with her employer, and as a result, she received unemployment benefits. (AR 72.) As a condition of receipt of unemployment benefits, Petitioner was required to apply for jobs, but she testified that, due to her medical conditions, she applied for jobs that she knew she would not receive. (AR 72.) The ALJ, rather simplistically, characterized this testimony as a "continuing job search," when other evidence that the ALJ did not discuss and erroneously discounted (such as the lay witness testimony) reflects otherwise.

And last, the ALJ found Petitioner may not have returned to work because she was providing care for her granddaughter. (AR 32, 662.) However, the record cited by the ALJ included also a statement that Petitioner's own symptoms were a factor preventing her from returning to work. (AR 662.) Petitioner testified that her limitations prevented her from active play with her granddaughter, in that her granddaughter spends the majority of time playing in her playroom by herself, with Petitioner nearby, and that she rarely leaves the house with her granddaughter. (AR 65-66.) And last, the ALJ did not reconcile the other evidence in the record, namely the lay witness testimony from Petitioner's

supervisor and father-in-law, which indicated Petitioner was terminated from employment because of her physical and mental symptoms.

Upon reviewing the evidence as a whole, the Court finds the ALJ's analysis of Petitioner's testimony underlying his credibility finding is not supported by substantial evidence.

**4.      Petitioner's RFC**

Because of the above errors, substantial evidence does not support the ALJ's RFC assessment. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, ... '[c]areful consideration' [must] be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'") (quoting SSR 96–8p at 5, 1996 WL 374184). Nor does substantial evidence support the ALJ's step-five determination, since it was based on an erroneous RFC assessment. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Because ... the ALJ had no clear or convincing reasons for rejecting [claimant's allegations of persistent disabling pain], claimant's pain should have formed a part of the ALJ's question to the expert."); *see also Lewis*, 236 F.3d at 517 ("Hypothetical questions asked of the vocational expert must set out all of the claimant's impairments.").

Petitioner argues that, had the ALJ properly weighed the medical opinions of the state agency reviewing physicians and properly evaluated Petitioner's credibility in conjunction with the lay witness statements, the ALJ would have found Petitioner limited to

light work and, due to her age, lack of transferrable skills, and education level, she would have been deemed disabled under Rule 202.06 of the Medical-Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids"). The ALJ acknowledged the applicability of Rule 202.06 during the hearing and in one of the hypotheticals posed to the vocational expert, but the hearing testimony indicated there may be jobs she could still perform. (AR 82-83.) Respondent did not address application of the grids in his brief. It is therefore unclear, based upon the record, what impact, if any, the grids may have in this case.

Accordingly, the Court finds remand is appropriate to address the errors discussed above in the context of the record as a whole. *Harmen v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]here the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

## CONCLUSION

For the foregoing reasons, the Court finds the ALJ's determination was not supported by substantial evidence and that this matter should be remanded to the Commissioner for further proceedings.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 20, 2019

Honorable Candy W. Dale
United States Magistrate Judge